IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SARVINT TECHNOLOGIES,
INC.,

      Plaintiff,

v.

OMSIGNAL, INC.,

      Defendant.

CIVIL ACTION FILE

NUMBER 1:15-cv-00070-TCB

## **O R D E R**

This patent infringement case comes before the Court on Defendant OMsignal, Inc.'s motion under Federal Rule of Civil Procedure 12(b)(2) and (3) to dismiss the amended complaint or, in the alternative, to transfer venue to the Southern District of New York [21]. As set forth below, the Court concludes that OMsignal is subject to personal jurisdiction in this Court and that transfer is inappropriate. OMsignal's motion will therefore be denied.

## I.    Background

## A.    Overview

Plaintiff Sarvint Technologies, Inc. is the exclusive licensee of U.S. Patent No. 6,970,731 (the "'731 patent"), which is entitled "Fabric-Based Sensor for Monitoring Vital Signs." Two of Sarvint's cofounders—Dr. Sundaresan Jayaraman, its chief scientist, and Sungmee Park, its chief technical officer—developed the technology behind the '731 patent at the Georgia Institute of Technology, where Jayaraman is a professor and Park is a research associate.[1] Georgia Tech describes the technology as a "wearable motherboard" or a "smart shirt." The shirt is designed to monitor an individual's vital signs unobtrusively and without the use of external wiring or adhesive electrode patches.

OMsignal develops technology to promote personal health and wellness, including wearable textiles that are designed to track biometric data of the individuals wearing them. OMsignal's biosensing products include a line of fitness wear known as "OM Signal Fitness

---

[1] Jayaraman and Park assigned their interests in the invention to the Georgia Tech Research Corporation ("GTRC"), which is the owner of the '731 patent. GTRC then awarded Sarvint the exclusive license to make, have made, sell, offer for sale, use, and import products covered by the '731 patent.

Shirts," which the company began selling in May 2014. Sarvint alleges that OMsignal's fitness shirts infringe the '731 patent, and it filed this action against OMsignal to enjoin the alleged infringement and recover monetary damages.[2] OMsignal has moved to dismiss the case, or alternatively to transfer it to the Southern District of New York, on the grounds of lack of personal jurisdiction and improper venue.

## B.   The Parties' Respective Contacts with Atlanta

Sarvint's principal place of business is in Atlanta, Georgia, and the company maintains an accounting and administrative office in Cumming, Georgia. [23-5] at 5. All of its officers and shareholders reside in Atlanta. *Id.* at 5-7. GTRC, which owns the '731 patent and granted Sarvint its license, is also located in Atlanta. Sarvint avers in its pleading that OMsignal is subject to suit in this judicial district because it regularly conducts or solicits business in Georgia, derives

---

[2] In its original complaint, Sarvint alleged that OMsignal infringed not just the '731 patent, but also U.S. Patent No. 6,381,482 (the "'482 patent"), which is entitled "Fabric or Garment with Integrated Flexible Information Infrastructure." On March 30, 2015, Sarvint filed its first amended complaint [12] in which it asserts claims relating only to the '731 patent. An amended complaint supersedes the original complaint and becomes the operative pleading in the case. *Dresdner Bank AG v. M/V/Olympia Vorager*, 463 F.3d 1210, 1215 (11th Cir. 2006).

substantial revenue from goods provided to individuals in Georgia, and advertises, offers to sell, sells, and ships allegedly infringing products to Georgia.

It is undisputed that OMsignal was founded in and continues to be based and operated out of Montreal, Canada, and that OMsignal does not have any brick-and-mortar place of business in Georgia. OMsignal does, however, operate a classic e-commerce website, www.omsignal.com, through which it appears that any customer, regardless of his or her location, may purchase its products. Sarvint alleges that Georgia residents have in fact purchased infringing products through OMsignal's website and that OMsignal has shipped its products to and derived more than $1,000 in revenue from Georgia residents.

OMsignal concedes that it has sold allegedly infringing products to Georgia residents, that it has derived roughly $1,000 from those sales, and that it maintains a website through which Georgia residents may purchase its products. But it argues that its contacts with the state are not sufficient to establish personal jurisdiction. The company has no

4

offices or places of business in Georgia, no employees, officers or directors here, has never traveled to Georgia, has no bank accounts, business records, real property, or registration here, and has never manufactured, serviced or maintained product inventory in Georgia. According to OMsignal, beyond "*de minimus* sales to an extremely small number of customers, OMsignal has no connection to the State of Georgia or the Northern District." [21-1] at 5. It therefore moves to dismiss for lack of personal jurisdiction.

## II.   Discussion

### A.   Legal Standard on a Motion to Dismiss

When a court's power to exercise personal jurisdiction over a non-resident defendant is challenged by a motion under Rule 12(b)(2), the plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the

plaintiff's favor. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005); *Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990).

## B.    Personal Jurisdiction

Personal jurisdiction over a non-resident defendant is permissible only where the forum state's long-arm statute permits jurisdiction without violating federal due process as set forth in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *See LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1371 (Fed. Cir. 2000); *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 788-89 (Fed. Cir. 2011).[3] Thus, subjecting a party to the jurisdiction of this Court requires the Court to conduct a two-part inquiry to determine (1) whether jurisdiction exists under Georgia's long-arm statute, and (2) whether exercising such jurisdiction is consistent with federal due process. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). And while courts previously held that Georgia's long-arm statute is co-terminus with the extent of

---

[3] Because this is a patent infringement action, the issue of personal jurisdiction is governed by Federal Circuit law. *LSI Indus. Inc.*, 232 F.3d at 1371 (Fed. Cir. 2000); *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1339 (N.D. Ga. 2013).

jurisdiction permitted by the due process clause of the Fourteenth

Amendment, the Eleventh Circuit has recently made clear that courts

must "apply the specific limitations and requirements of O.C.G.A. § 9-

10-91 literally and must engage in a statutory examination, that is

independent of, and distinct from, the constitutional [due process]

analysis to ensure that both, separate prongs of the jurisdictional

inquiry are satisfied." *Diamond Crystal Brands*, 593 F.3d at 1263

(interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l*

*Bank of Ames, Iowa,* 620 S.E.2d 352 (Ga. 2005)). As such, the Court

engages in two separate inquiries below.

### 1.    Georgia's Long-Arm Statute

Georgia's long-arm statute permits the exercise of personal

jurisdiction over a non-resident defendant where the cause of action

asserted "arises out of" the defendant's "transact[ion of] any business

within [Georgia]." O.C.G.A. § 9-10-91(1); *Innovative Clinical*, 620 S.E.2d

at 354.[4] The Georgia Supreme Court has construed this broad language

---

[4] There are two kinds of personal jurisdiction—specific and general. O.C.G.A. § 9-10-91(1) creates specific jurisdiction, which "'arises out of' or 'relates to' the cause of action" and may exist "even if [the nonresident defendant's] contacts [with

literally. *Diamond Crystal*, 593 F.3d at 1264. Thus, the language of subsection (1) of the statute "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State." *Diamond Crystal*, 593 F.3d at 1261 (quoting *Innovative Clinical*, 620 S.E.2d at 355).

"Interpreted literally, 'transacts any business' requires that the nonresident defendant has purposefully done some act or consummated some transaction in Georgia." *Id.* at 1264 (citing *Aero Toy Store, LLC v. Grieves,* 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)). However, "a defendant need not physically enter the state . . . [and] a nonresident's mail, telephone calls, and other 'intangible' acts, though occurring while the defendant is physically outside of Georgia, must be considered." *Id.* The question is whether, upon analysis of all the defendant's tangible

---

the forum state] are 'isolated and sporadic.'" *LSI Indus., Inc.*, 232 F.3d at 1375 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985)). By contrast, "[g]eneral jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state" and permits the exercise of personal jurisdiction over a defendant "even when the cause of action has no relation to those contacts." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984)). Only specific jurisdiction over OMsignal is alleged to exist in this case, and on the record before the Court, it is apparent that OMsignal's contacts with Georgia would not permit this Court to exercise general jurisdiction over OMsignal.

and intangible conduct, "it can fairly be said that the nonresident [defendant] has transacted any business within Georgia." *Id.*

Here, OMsignal effectively concedes that it "transact[ed] any business within [Georgia]" within the literal meaning of O.C.G.A. § 9-10-91(1). By its own admission, it has sold at least seven allegedly infringing products to Georgia consumers, has derived over $1,000 in revenue from those transactions, and operates a website that allows residents and consumers in Georgia to place orders and purchase allegedly infringing products. Upon these facts, O.C.G.A. § 9-10-91(1) plainly authorizes the exercise of specific personal jurisdiction over OMsignal for the causes of action asserted against it by Sarvint. *See Thomas v. Strange Eng'g, Inc.,* No. CV 111-074, 2012 WL 993244 at *5 (S.D. Ga. 2012) (applying literal interpretation of the long-arm statute and holding that "any business" was transacted when defendant shipped one product to Georgia and derived revenue from the sale of that product).

### 2.   Federal Due Process

Having determined that Georgia's long-arm statute is satisfied, the Court next considers whether the exercise of personal jurisdiction comports with constitutional due process. Federal due process demands that an out-of-state defendant have "minimum contacts" with the forum state such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In evaluating whether the exercise of specific personal jurisdiction in a given case satisfies this requirement, the Federal Circuit employs a three-prong test that looks to "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)). The first two factors correspond to the "minimum contacts" aspect of the due process analysis under *International Shoe*, and the third factor corresponds to the concept of "fair play and substantial justice." *Groberg v. Mako*

*Prods.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). Once minimum contacts are established, jurisdiction over a defendant is presumptively reasonable, and the burden then shifts to the defendant to demonstrate a "compelling case" as to why the exercise of jurisdiction would be unreasonable. *Burger King,* 471 U.S. at 476-77; *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006).

### a.   Purposefully Directed Activities

The requirement that the defendant have "purposefully directed" its activities at the forum state ensures that a litigant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or third person." *Burger King,* 471 U.S. at 475. The Supreme Court has made clear that "so long as [a defendant] creates a substantial connection with the forum, even a single act can support jurisdiction." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citing *Burger King*, 471 U.S. at 475); *Licciardello v. Lovelady,* 544 F.3d 1280, 1285 (11th Cir. 2008) (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)). When a defendant purposefully

avails itself of contacts with the forum state and a sufficient nexus exists between those contacts and the plaintiff's claim—i.e., when it is specific jurisdiction that is alleged to exist—then the defendant can be said to have fair warning of potential litigation in the forum state.

Here, it is undisputed that OMsignal has no storefronts, business operations, representatives, or retailers in Georgia and that its only known contacts with residents of this state occurred through its website. OMsignal contends that such online activity is insufficient to subject it to jurisdiction in this Court. Sarvint disagrees.

Transacting business over the Internet has created a unique framework for modern jurisdictional jurisprudence. In determining whether the existence of a website is sufficient to confer jurisdiction over a defendant, many courts look to the level of "interactivity" of the website. The most oft-cited case is *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), in which the court explained that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the

Internet." The court then created a "sliding scale" of interactivity that

distinguished between interactive, semi-interactive, and passive

websites, with each category bearing particular jurisdictional

consequences:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a forum jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted).

The Federal Circuit has not yet addressed what weight should be

given to *Zippo*'s sliding scale of interactivity, and the parties have not

briefed the Court on the extent to which OMsignal's website is or should

be considered interactive. Some circuits have embraced this analysis,[5] and still others have adopted it as one factor among several relevant to the question of purposeful availment.[6] Although the Court finds *Zippo*'s analysis well reasoned, because the Federal Circuit has not weighed in, the Court does not treat interactivity as the *sine qua non* of specific personal jurisdiction. Instead, the Court views the *Zippo* interactivity analysis as one factor that is helpful in determining the nature and extent of a defendant's purposeful availment of and minimum contacts with a forum state.

---

[5] *See Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 452 (3d Cir. 2003) (recognizing *Zippo* as a "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site"); *Revell v. Lidov,* 317 F.3d 467, 471 (5th Cir. 2002) (acknowledging the circuit's adoption of *Zippo's* sliding scale analysis, while recognizing it is not always well adapted to the *general* jurisdiction inquiry); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir. 1997) (finding that "the common thread, well stated by the district court in *Zippo*, is that 'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.'").

[6] *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir. 2002) (adopting and adapting the sliding scale analysis); *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 890 (6th Cir. 2002) (looking to *Zippo* but also explaining that, at least in the context of a general jurisdiction analysis, the defendant's "website must be considered along [its] other interactions with Michigan residents"); *Lakin v. Prudential Sec., Inc.* 348 F.3d 704, 711 (8th Cir. 2003) (holding that the "Zippo model is an appropriate approach in cases of specific jurisdiction").

Applying *Zippo* to the facts of this case, there can be little doubt that OMsignal's website is interactive. It displays the company's products, allows for communication and sales through the website, and invites potential customers to contact the company. Courts applying *Zippo* have consistently found that similar websites are at the most interactive end of the spectrum and thus provide a valid basis for exercising specific jurisdiction. *See, e.g., Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1370-72 (N.D. Ga. 2013) (finding specific jurisdiction based in part on *Zippo* analysis where defendant's website allowed customers to purchase goods and calculate the cost of shipping purchases to any state); *Zing Bros., LLC v. Bevstar, LLC,* No. 2:11-cv-00337 DN, 2011 WL 4901321, at *3 (D. Ut. Oct. 14, 2011) (finding specific jurisdiction where defendant's website allowed customers to select "Utah" as a destination address, making the site "'something more' than a non-targeted transaction site"); *Fusionbrands, Inc. v. Suburban Bowery of Suffern, Inc.*, No. 1:12-cv-0229-JEC, 2013 WL 5423106 (N.D. Ga. Sept. 26, 2013) (specific jurisdiction existed where defendant clearly did business over the Internet and made sales

15

through website); *Stomp, Inc. v. NeatO, LLC,* 61 F. Supp. 2d 1074, 1078

(C.D. Cal. 1999) (exercising personal jurisdiction where some portions of

defendant's website merely provided information about the company,

but "a substantial portion of the site [was] dedicated to allowing the

consumer to purchase [the allegedly infringing] products on-line."). The

Court therefore concludes that the level of interactivity and the

commercial nature of the information exchanged through OMsignal's

website favors the exercise of specific personal jurisdiction in this

action.

And while OMsignal's web presence suggests that the exercise of

jurisdiction is proper, it is OMsignal's direct sale and shipment of the

product to Georgia residents, and its concomitant receipt of revenue

from those transactions, that clearly establishes the key contact for

purposes of the present analysis. That is, even assuming *Zippo's*

analysis is not dispositive, as the Court does, a more traditional due

process analysis yields the same result. "Defendant's creation of a

website that allows Georgia customers to directly purchase its products

constitutes purposeful availment, as defendant financially benefits from

doing business in Georgia." *Rice*, 975 F. Supp. 2d at 1371 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (when a corporation purposefully avails itself of the privilege of conducting activities in the forum, it is on notice that it may be sued and is therefore subject to personal jurisdiction)).

OMsignal relies heavily on the theory that mere operation of a commercial website, available to customers across the country, is not itself sufficient to establish personal jurisdiction in any district where the website can be viewed. *See Datascape, Inc. v. Sprint Nextel Corp.*, No. 1:07-cv-0640-CC, 2008 U.S. Dist. LEXIS 124238, at *18-19 (N.D. Ga. Sept. 29, 2008) (recognizing that the "mere operation of a commercially interactive website is not by itself an adequate basis for the exercise of personal jurisdiction anywhere the site can be viewed."). But this argument misses the mark. This Court's jurisdiction over OMsignal derives not from its operation of a passive website that is merely accessible to users in Georgia. Rather, this Court can exercise personal jurisdiction over OMsignal because of its contacts with this state through the sale and shipment of products here and its receipt of

17

revenue from those sales. *Cf. id.* (operation of a website did not give rise to personal jurisdiction over a defendant that "ha[d] no business operations in the State of Georgia" and never manufactured, used, sold, imported, or offered for sale any products or services in Georgia or anywhere else); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) (discussing the lack of specific jurisdiction in cases involving "essentially passive" websites). It is inapposite that OMsignal's sales to Georgia residents were accomplished through its website because "'[c]yberspace' . . . is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar." *Gorman*, 293 F.3d at 510. While the Federal Circuit has not ruled directly on whether purposeful availment exists when a defendant's only contacts with the forum state are sales made through an e-commerce website, the Court concludes that the contacts in this case are more than adequate to support the exercise of specific jurisdiction.

OMsignal contends that its sales to Georgia residents account for a mere 0.5% of its sales and 0.35% of its total revenue and that such low

numbers are insufficient to confer jurisdiction. For this proposition, OMsignal cites *Hoo-Ahhs, LLC v. Ira Green, LLC*, No. 14-1172 (DWF/TNL), 2014 WL 6454021, *2-3 (D. Minn. Nov. 17, 2014), and *Stairmaster Sports/Med. Products, Inc. v. Pacific Fitness Corp.*, 78 F.3d 602 (Fed. Cir. 1996). Both of those cases are factually distinguishable and of limited support to OMsignal. Most significantly, both *Hoo-Ahhs* and *Stairmaster* involved claims of personal jurisdiction over defendants whose contacts with the forum state were limited to a few sales—some of which were made through a third-party website—of products unrelated to the litigation.

Here, by contrast, the claims against OMsignal arise from its sale and shipment of allegedly infringing products to Georgia residents, so specific personal jurisdiction may exist even if OMsignal's Georgia activities are relatively limited in scope. Indeed, multiple courts have found personal jurisdiction over a patent defendant based on a single sale or minimal sales of the accused product, particularly when it is sold directly by the defendant into the forum. *See, e.g., TriStrata Tech., Inc. v. Emulgen Labs., Inc.,* 537 F. Supp. 2d 635, 641 (D. Del. 2008); *Quick*

*Point, Inc. v. Excel Eng'g, Inc.,* No. 4:08cv797, 2008 U.S. Dist. LEXIS
124201, at *10-13 (E.D. Mo. Dec. 17, 2008); *Maxwell Chase Techs.,*
*L.L.C. v. KMB Produce, Inc.,* 79 F. Supp. 2d 1364, 1372-73 (N.D. Ga.
1999); *Engineered Products & Servs., Inc. v. Echo Eng'g & Prod.*
*Supplies, Inc.*, 666 F. Supp. 2d 938 (E.D. Wisc. 2009) (jurisdiction
proper where defendant sold only two allegedly infringing products into
forum state with a total value of only seventy dollars); *Young Again*
*Prods., Inc. v. Acord,* 307 F. Supp. 2d 713, 716-17 (D. Md. 2004) (finding
specific jurisdiction where defendant's Internet sales to forum state
customers accounted for only .02% of its total national sales); *Stomp*, 61
F. Supp. 2d at 1078 ("Although the actual number of sales to California
citizens may be small, the critical inquiry in determining whether there
was purposeful availment of the forum state is the quality, not merely
the quantity, of the contacts.") (internal citation omitted).

 Under all the circumstances, the Court finds that seven sales
transactions of allegedly infringing products to Georgia customers,
made through the company's own website, are adequate to establish
personal jurisdiction over OMsignal notwithstanding the fact that those

sales represent a small percentage of total sales. *See Osteotech, Inc. v. GenSci Regeneration Scis.,* 6 F. Supp. 2d 349, 354 (D.N.J. 1998) (finding jurisdiction based on a single infringing sale and confirming the irrelevance of the percentage of the defendant's total sales formed by the sale in the forum to the specific jurisdiction analysis of a patent claim); *WhatRU Holding, LLC v. Bouncing Angels, Inc.*, 2014 WL 641517, at *4 (D. Minn. Feb. 19, 2014) (finding that the low number or relative percentage of defendant's total sales did not render exercise of personal jurisdiction unreasonable or unfair).

Most instructive to the Court's inquiry today is the District of Minnesota's decision in *Bouncing Angels*. There, the plaintiff brought suit against two defendants, EZ Inflatables, Inc. and Bouncing Angels. Each operated a website that was accessible across the country and that the plaintiff argued was interactive and directed at the forum state, Minnesota. EZ Inflatables had not made any sales (infringing or otherwise) into Minnesota, and the court concluded that its website alone would not confer jurisdiction. But Bouncing Angels had made a sale—just one—into the forum state, and only a few dozen sales of the

21

accused products nationwide. The court held that one sale of an allegedly infringing product provided a constitutionally sound basis for exercising jurisdiction over Bouncing Angels, notwithstanding the company's argument that it never engaged in marketing campaigns, sales initiatives, or targeted communications to the forum state's customers.

Here, it is not OMsignal's mere maintenance and use of a website that unquestionably confers jurisdiction in this Court; it is its repeated sale of allegedly infringing products into the forum state. *See Caddy Prods., Inc. v. Greystone Int'l, Inc.,* Civ. No. 05-301 JRTFLN, 2005 WL 3216689 (D. Minn. Nov. 29, 2005) ("The general rule is that when a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant."). OMsignal purposefully directed its activities at the forum by accepting at least seven orders and shipping the accused product to Georgia. *See id.; Moore v. Harney Hardware, Inc.,* Civ. Action No. H-05-4054, 2006 WL 1342820 (S.D. Tex. May 15, 2006).

### b.   Claims Arise out of Forum-Related Activities

"[T]he fair warning requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Diamond Crystal,* 593 F.3d at 1267. *See* 35 U.S.C. § 271(a) (identifying selling as an act of infringement); *N. Am. Philips Corp. v. Am. Vending Sales, Inc.,* 35 F.3d 1576, 1578-79 (Fed. Cir. 1994) (confirming that to sell an infringing article to a buyer in a forum is to commit a tort in that forum). There is no dispute in this instance that the products sold by OMsignal to Georgia customers are the very subject of this litigation.

"The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant." *Osteotech,* 6 F. Supp. 2d at 354 (asserting jurisdiction over alleged infringer based upon single direct sale to a New Jersey customer) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1570-71 (Fed. Cir. 1994), and *N. Am. Philips Corp.,* 35 F.3d at 1578-79. When a defendant sells

23

an allegedly infringing product in a particular forum, the defendant not only has fair warning that it could be haled into court in that forum, but the forum in which the allegedly infringing product is sold has a clear interest in prohibiting the entry of infringing products into its territory. *Id.*

The Court has no doubt that sufficient minimum contacts exist to support the exercise of jurisdiction.

### c.   The Exercise of Jurisdiction Is Fair and Reasonable

Finally, due process requires that the exercise of personal jurisdiction be reasonable. The reasonableness prong exists to protect defendants against unfairly inconvenient litigation. *World-Wide Volkswagen,* 444 U.S. at 292. Once a court finds that minimum contacts exist, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477. OMsignal has not met that burden.

The Supreme Court has acknowledged that there are circumstances when the exercise of jurisdiction would be constitutional

but nevertheless would offend traditional notions of fair play and substantial justice, such as when a defendant claims "substantial inconvenience" and therefore seeks a change in venue. *Burger King*, 471 U.S. at 477-78. But the defendant seeking to defeat jurisdiction must "present a compelling case." *Id.* OMsignal, having moved for transfer of this case, has made such arguments, but as the Court addresses at length below, the relevant factors do not weigh in favor of a transfer under § 1404(a). And to the extent OMsignal has failed to meet its burden of showing that the relevant convenience and efficiency factors favor a transfer under § 1404(a), "it necessarily fails to meet the more demanding burden of showing that this is 'one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.'" *Fusionbrands*, 2013 WL 5423106, at *7 (citing *Synthes v. GM Dos Reis Jr. Ind. Com. De Equip, Medico,* 563 F.3d 1285, 1300 (Fed. Cir. 2009)).

The Court finds that the assertion of personal jurisdiction over OMsignal is reasonable and will comport with fair play and substantial

justice. The burden on OMsignal in having to defend these claims in Georgia is slight, and Sarvint clearly has an interest in obtaining effective and convenient relief in its home state of Georgia, where OMsignal has made allegedly infringing sales. *See e.g., Beverly Hills Fan,* 21 F.3d at 1569 (finding burden on Chinese defendant required to defend claims in Virginia insufficient to defeat jurisdiction). And as discussed below, the judicial system's interest in obtaining the most efficient resolution of this controversy weighs heavily in favor of jurisdiction and adjudication in Georgia.

### C.    Venue

Based on its contention that personal jurisdiction is lacking, OMsignal argues that venue is improper under 28 U.S.C. § 1406(a). Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction at the time the action is commenced. *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990); 28 U.S.C. § 1400(b) (plaintiff may bring a patent infringement action "in the judicial district where the defendant resides"). Because OMsignal is subject to personal jurisdiction, it

resides in this district for the purposes of determining venue. *See N. Am. Philips Corp.*, 35 F.3d at 1577 n.1 ("The venue issue is subsumed in the personal jurisdiction issue."). Thus, no separate venue inquiry is necessary.

### D.    Motion to Transfer

As an alternative to dismissal, OMsignal argues that this case should be transferred to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no dispute that this action "might have been brought" in the Southern District of New York, so the Court need only determine whether transferring this action to that court would serve "the convenience of parties and witnesses" and the "interest of justice." The decision to transfer a case under Section 1404(a) rests within the

Court's sound discretion. *See Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 654-55 (11th Cir. 1993).[7]

In determining whether a case should be transferred to another court, relevant factors include, but are not limited to: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).[8]

OMsignal, as the party seeking transfer, bears the burden of establishing that the balance of these factors favors transfer. *In re*

---

[7] Because a motion to transfer does not raise issues unique to patent law and is considered to be purely procedural in nature, the Court applies the law and standards of the Eleventh Circuit. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010).

[8] Below, the Court addresses only those factors disputed by the parties. The factors not expressly addressed, the relative means of the parties and the forum's familiarity with governing law, have been considered by the Court and are decidedly neutral as to transfer.

*Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). It must make "a strong case for transfer and if the transfer would merely shift inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." *Bell v. K-Mart Corp.*, 848 F. Supp. 996, 998 (N.D. Ga. 1994) (quoting *Grey v. Cont'l Mktg. Assocs., Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)). Moreover, "federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.,* 870 F.2d at 573. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Moore v. McKibbon Bros., Inc.*, 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)).

Given its significance, the Court first considers the level of deference to be afforded Sarvint's choice of forum.

### 1.    Deference to Sarvint's Choice of Forum

OMsignal characterizes Sarvint as a non-practicing entity that did not develop and does not own the '731 patent. According to OMsignal,

Sarvint does not have ties to Georgia and is in this district for no other reason than to manufacture jurisdiction. This is patently false. The inventors of the patent are shareholders and officers of Sarvint and long-time residents of Atlanta. All of the research and development associated with the patent took place at Georgia Tech, located in Atlanta, and the patent is owned by GTRC, which is also in Atlanta. Sarvint has been and remains headquartered in Atlanta, and it has held an exclusive license since April 2014. Sarvint has sufficiently shown that it is at home in this district. Its connection to the litigation is anything but weak, and its choice of forum shall be given significant weight. This consideration weighs strongly against transfer, and OMsignal's burden is therefore a heavy one.

### 2.   Convenience of Witnesses

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses." *Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989). OMsignal has made no such showing.

For purposes of this factor, the focus of the Court's inquiry should be on "key witnesses," i.e., those whose knowledge and anticipated testimony is relevant not only to damages, but also to liability. *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004); *McNair v. Monsanto Co.,* 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003).[9] The true concern is not merely "convenience" of the witnesses, but the likelihood that key witnesses will be able to testify at trial. *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361-62 (S.D. Fla. 2001). Courts accordingly give less weight to inconvenience to witnesses who are employed by a party, because the party can ensure their presence at trial. *Id.*; *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("[This factor's] significance is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party."); *Ramsey*, 323 F. Supp. 2d at 1356

---

[9] Specifically, the court must determine whether the witnesses have actual knowledge about the issues in the case, where they are located, and whether it will be more convenient for them if the action is in Georgia or New York. *Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1190 (S.D. Fla. 2007).

(location of party witnesses, including individuals "closely aligned with a party," is accorded less weight in the transfer analysis).

OMsignal argues that its representatives, who undoubtedly have knowledge relevant to the issue of liability in this case, are located in Canada. Conceding that the location of party-witnesses is accorded less weight in the transfer analysis, OMsignal also identifies seven non-party witnesses who it claims will be burdened by travel to Georgia.[10] Five of those seven witnesses are representatives of Ralph Lauren, the company with which OMsignal claims to have collaborated in developing and marketing a line of its allegedly infringing products. But OMsignal conveniently fails to mention that Ralph Lauren is also party to a nearly identical action currently pending in this Court. Because Ralph Lauren, which is litigating these same issues in this Court, can compel the presence of its representatives, these five witnesses are effectively party-witnesses for purposes of this case.

---

[10] The declaration of Maxime Julien [21-2], included with OMsignal's motion to dismiss, identifies six third party witnesses from whom the company expects testimony. In its reply brief, OMsignal identifies a seventh individual, David Kellie, yet another representative from Ralph Lauren.

The remaining two non-party witnesses identified by OMsignal are New York-based employees of the U.S. Tennis Association ("USTA"). According to OMsignal, these witnesses may be able to testify to the "decision to outfit USTA ball boys with the [Ralph Lauren] Polo Tech Shirt at the [2014] U.S. Open." [21-2] at ¶ 36. USTA may be considered an early customer of OMsignal products, through its partnership with Ralph Lauren in connection with the 2014 U.S. Open, but the record does not demonstrate that OMsignal ever interacted with USTA or that the testimony of any USTA employees would be critical to determining the nature of the alleged infringement. *See Fusionbrands*, 2013 WL 5423106, at *9 ("Defendant's liability for infringement will be determined by the accused products that were marketed and sold and the infringing character of those products. Key witnesses for this inquiry are the parties themselves and possibly expert witnesses and customers."). It is unclear what knowledge USTA employees have related to the development, design, or manufacturing of the allegedly infringing products. Thus, they cannot be said to be "key" witnesses in this case.

OMsignal has not identified any other non-party witnesses whose testimony might be difficult to secure or inconvenient. Sarvint, for its part, has identified at least six non-party witnesses from whom it expects to seek testimony, all of whom reside in the Northern District of Georgia.[11] Importantly, courts have denied motions to transfer when the effect of granting such a motion would be to merely "shift the inconvenience from one party's witnesses to another." *Ramsey*, 323 F. Supp. 2d at 1357 (finding that convenience of witnesses weighed heavily in favor of transfer to Colorado where nineteen of the twenty-five identified key witnesses lived and where "few, if any, key witnesses" had any connection to Georgia); *see also Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1300-01 (S.D. Fla. 2002) (transfer was appropriate where the majority of key witnesses—including the

---

[11] Sarvint has identified two individuals from the School of Materials Science and Engineering at Georgia Tech, one individual from Emory University School of Medicine, two individuals from the Scheller College of Business at Georgia Tech, and Dr. Rangaswamy Rajamanickam, all of whom reside in Atlanta and are knowledgeable about the development and technology embodied in the '731 patent. OMsignal argues in reply that a number of these witnesses "appear to be affiliated with [GTRC]," presumably based upon their employment at Georgia Tech. And while GTRC is not a party to this action, the Court does acknowledge that it is undoubtedly interested in the outcome of litigation, based upon its ownership of the patent-in-suit. Some, but not all, of these witnesses may therefore be considered "closely aligned" with a party.

non-moving party's own witnesses—resided in the transferee district, thus eliminating the possibility that the moving party was simply trying to shift the inconvenience to the non-moving party's witnesses).

Having considered the location of key potential witnesses, and the effect of transferring this action to the Southern District of New York, the Court concludes that transfer would merely shift the inconvenience from one party to another. Consequently, this factor does not weigh in favor of transfer.

### 3.   Location of Relevant Documents

District courts in this circuit have routinely found that the location of physical documents does not play a substantial role in the venue analysis due to electronic storage and transmission of information. *See, e.g.*, *Wi-LAN USA, Inc. v. Apple Inc.*, No. 12-cv-24318-KMM, 2013 WL 1343535, at *3 (S.D. Fla. Apr. 2, 2013); *Carroll v. Tex. Instruments, Inc.*, No. 2:11-cv-1037- MHT, 2012 WL 1533785, at *7 (M.D. Ala. May 1, 2012); *Polyform A.G.P. Inc. v. Airlite Plastics Co.*, 4:10-cv-43- CDL, 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15, 2010).

OMsignal argues that its documents are located in Montreal. Sarvint predictably responds that its relevant documents are located in Atlanta.

The Court acknowledges that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," and courts therefore often consider the place where the defendant maintains its documents. *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 330 (E.D.N.Y 2006)). But in the digital age, technology has significantly reduced the burden imposed by litigating in a foreign forum, and while this consideration is not yet completely irrelevant, the Court affords it only minimal consideration. *See Polyform,* 2010 WL 4068603, at *4 (concluding that the physical location of relevant documents "is not particularly significant given the widespread use of electronic document production"). The Court finds that this factor weighs slightly in favor of transfer but that it is to be given little weight in the overall analysis.

### 4.     Convenience of the Parties

It is obviously more convenient for Sarvint to litigate this dispute in Georgia, and more convenient for OMsignal to litigate in a forum closer to Montreal. But "[w]here a transfer merely shifts the burden of inconvenience from one party and its witnesses to another party and its witnesses, courts will not disturb a plaintiff's choice of forum." *Zurich Am. Ins. Co. v. Renasant Ins. Co.*, No. 8:10-CV-1769-T-17EAJ, 2011 WL 722972, at *7 (M.D. Fla. Feb. 23, 2011). Accordingly, this factor does not favor transfer.

### 5.     Locus of Operative Facts

The locus of operative facts generally lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced. *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010). The patent-in-suit was developed in Atlanta, Georgia. And the allegedly infringing product was designed and developed in Canada. OMsignal attempts to argue that this factor is therefore neutral as to transfer. But such a conclusion ignores the fact that no design, development or production appears to have occurred in

37

the Southern District of New York, or any other U.S. jurisdiction for that matter. As such, the Court cannot say that OMsignal has adequately demonstrated that New York is by any means the locus of operative fact, and this factor weighs against transfer to the Southern District of New York.

### 6.   Availability of Compulsory Process

This factor favors transfer to the district where the court has absolute subpoena power to compel attendance at depositions and at trial. Rules 45(b)(2) and 45(c)(3) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. FED. R. CIV. P. 45. "This factor is generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 442 (E.D.N.Y. 2012) (citing *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000)).

38

Again, the only witnesses to whom OMsignal makes reference are representatives of Ralph Lauren and the USTA, representatives who, as the Court already noted, will no doubt be present for related proceedings pending in this Court. There is otherwise no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral.

### 7.   Trial Efficiency and the Interest of Justice

In addition to the private concerns of the parties, the Court must consider the public interest factors in "the interest of justice." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29-30 (1988). Sarvint has brought six nearly identical suits against a number of Defendants in this district.[12] Each of those suits involves alleged infringement of the '731 patent and requires the Court to address the same or similar legal issues. Sarvint argues that both efficiency and the interest of

---

[12] Those cases are: *Sarvint Technologies Inc. v. Athos Works, Inc., et al.*, 1:15-cv-00068-TCB; *Sarvint Technologies Inc. v. Carre Tech, Inc.*, 1:15-cv-00069-TCB; *Sarvint Technologies Inc. v. Ralph Lauren Corp.*, 1:15-cv-00071-TCB; *Sarvint Technologies Inc. v. Sensoria, Inc.*, 1:15-cv-00072-TCB; *Sarvint Technologies Inc. v. Textronics, Inc. and Adidas N. Am., Inc.*, 1:15-cv-00073-TCB; and *Sarvint Technologies Inc. v. Victoria's Secret Stores, LLC*, 1:15-cv-00074-TCB. Sarvint has since voluntarily dismissed the case against Athos Works without prejudice, leaving a total of six related cases pending in this Court, all before the undersigned.

consistency and justice demands maintaining these related actions in this district.

The Federal Circuit has explained that "[t]he existence of multiple lawsuits involving the same issues is a paramount consideration in determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Where there is significant overlap in the legal claims, the substantive issues, and the patent-in-suit, judicial economy is served by maintaining those actions in the same district. Transferring this matter to the Southern District of New York would result in the inefficient use of judicial resources and more importantly, the potential for inconsistent rulings as to critical inquiries like claim construction. *See Holley Performance Prods. v. Barry Grant, Inc.*, 74 U.S.P.Q.2d 1357 (N.D. Ill. 2004) ("It will be a significant waste of judicial economies for two separate courts to adjudicate issues regarding the same patent. There is great risk that consideration of the same patent by two separate federal courts will create inconsistent results, particularly with regard to claim construction rulings."); *Innovative Global Sys. LLC v. Turnpike Global*

*Tech. L.L.C.*, No. 6:09-cv-157, 2009 WL 3754886, *2 (E.D. Tex. Oct. 20, 2009) (denying motion to transfer venue because "transfer would create duplicative proceedings on the same patents, unnecessarily wasting judicial resources"); *O.S. Sec. LLC v. Schlage Lock Co.*, No. SACV 14-319 AG(DFMx), 2014 WL 6766265, *2 (C.D. Cal. Sept. 17, 2014) ("[J]udicial efficiency weighs strongly against transfer" due to "common issues of, for example, claim construction and invalidity.")

OMsignal argues that when faced with a "similar situation" to the one facing the Court today, courts in this circuit have chosen to allow transfer, citing *Rothschild Storage Retrieval Innovations, LLC v. Sony Mobile Communications (USA) Inc.*, No. 14-CIV-22652, 2015 WL 224952 (S.D. Fla. Jan. 15, 2015), and *Seoul Semiconductor Co. v. Curtis International Ltd.*, Case No. 14-22729-CIV-ALTONAGA/O'Sullivan, slip op. (S.D. Fla. Dec. 10, 2014). Its reliance on these cases is misplaced.

In *Rothschild*, the court granted the defendant's motion to transfer despite the fact that seven related actions were pending in the same district. However, the court did not ignore or even discount the concern for litigation efficiency when there are multiple pending suits

41

concerning the same patent. It analyzed the traditional § 1404 factors
and found that the factors "heavily" favored transfer to the Northern
District of California. *Rothschild*, 2015 WL 224952 at *5.[13] The court
acknowledged that the pendency of multiple related cases is a
"paramount consideration" when determining the propriety of transfer,
and it expressly recognized that claim construction "is best resolved by
a single court." *Id.* at *7 n.1. But the facts of that case led the court to
conclude that the "single court" best suited to resolve the issue was the
Northern District of California, and significantly, it noted that "the
defendants in *all but one* of the [related] cases" had moved for transfer
to that court. *Id.* at *7. Here, conversely, the traditional § 1404 factors
weigh against transfer, and because OMsignal and Ralph Lauren are
the only parties that have moved for transfer to the Southern District of

---

[13] Among other reasons, the court found transfer appropriate because the
transferee forum had significant ties to the allegedly infringing products; the
plaintiff's ties to the district were tenuous; the plaintiff (as an entity) was formed
for no other purpose than to litigate the patent at issue; and the plaintiff had
acquired the patent a mere two weeks before commencing the lawsuit. The same is
not true here. Sarvint and the inventors of the '731 patent have significant ties to
this district, and the technology behind the patent was developed here. Sarvint has
been the exclusive licensee of the '731 patent since April 2014, approximately nine
months before these lawsuits were filed. OMsignal is a Canadian company and did
not design or develop its allegedly infringing products in New York.

New York, transferring two of the six cases and retaining the other four would increase the likelihood of inconsistent rulings and undermine judicial economy.

OMsignal's citation to *Seoul Semiconductor* is even less helpful to its position. In that case, the plaintiff was a Korean corporation and the defendant was a Canadian corporation. The plaintiff filed suit in Florida despite the fact that neither party had any significant connection to Florida, none of the operative facts arose there, and none of the third-party witnesses were located there. When the defendant sought transfer to California—where it had some operations—the court found that the pendency of a second patent action filed by the same plaintiff, who otherwise had no connection to Florida, was insufficient to overcome the obvious fact that Florida was an inconvenient and improper venue, particularly because the transferee district already had experience with two of the patents at issue because of other ongoing litigation. In light of Sarvint's extensive and longstanding ties to this district, OMsignal's lack of ties (other than geographic proximity) to the

43

Southern District of New York, and the five related cases currently pending in this Court, *Seoul Semiconductor* is inapposite.

In a final attempt to escape litigation in this Court, OMsignal argues that "the availability of MultiDistrict Litigation ('MDL') provides the proper mechanism for preserving judicial efficiency while ensuring that each defendant is granted a separate trial in the appropriate venue." [21-1] at 21. Initially, the Court notes that it is without the authority to create an MDL action. *See* 28 U.S.C. § 1407(c) (providing for a transfer of a case into an MDL only by "the judicial panel on multidistrict litigation upon its own initiative" or by "motion filed with the panel"). But in any event, the Court is doubtful that consolidation into an MDL would be appropriate in this case in light of the few cases presently pending involving Sarvint's patents, the fact that all the cases are pending in this district and before the undersigned, and this Court's experience overseeing patent infringement actions. *See In re Constellation Techs. LLC Patent Litig.*, 38 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014) (denying motion to transfer where there were only five actions pending in just two districts, noting that "informal coordination

44

among the two involved courts and cooperation by the parties seems both practicable and preferable to centralization").

### 8.   Other Considerations

The Court notes that Sarvint has filed a motion for preliminary injunction in this case, as well as in the six related actions pending in this Court. And while the Court recognizes that an injunction ought not issue from a court where venue is improper, where the primary concern is merely one of convenience, "the interests of justice surely would be disserved by forcing a plaintiff to await ruling on a motion for preliminary injunction until a more convenient court has time to receive, apprehend and consider the motion." *Foxworthy v. Custom Teeds, Inc.*, 879 F. Supp. 1200, 1208 (N.D. Ga. 1995). Where a substantive motion is pending that requires the Court's immediate attention, such a motion should be considered by a court in its transfer analysis. *Id.* at 1209 ("In short, one significant factor that ought to be placed onto the § 1404(a) scales is the pendency of substantive motions requiring immediate attention."). To that extent, the Court simply

acknowledges yet another consideration that may be added to the scales tipping decidedly against transfer.

Considering the totality of the circumstances, the Court concludes that this action should not be transferred to the Southern District of New York.

## III.   Conclusion

For the foregoing reasons, OMsignal's motion to dismiss or transfer [21] is denied. The Clerk is directed to indicate on the docket that OMsignal has withdrawn its previously filed motion to dismiss the original complaint [8]. *See* [21-1] at 1-2 n.1.

IT IS SO ORDERED this 2nd day of June, 2015.

_____
Timothy C. Batten, Sr.
United States District Judge

46